UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

RAFAEL L. PHINAZEE                )
                                  )
v.                                )   No. 1:03-cr-145/1:09-cv-33
                                  )   *Chief Judge Curtis L. Collier*
UNITED STATES OF AMERICA          )

## MEMORANDUM

Rafael L. Phinazee ("Phinazee") has filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (Court File No. 486).[1] Phinazee contends he was denied effective assistance of counsel in violation of the Sixth Amendment of the United States Constitution. In addition, he claims the government failed to turn over his pre-trial statements during his criminal proceedings, and his sentence was improperly and illegally enhanced for possession of a firearm.

The motion, together with the files and record in this case, conclusively show Phinazee is entitled to no relief under 28 U.S.C. § 2255. For the reasons which follow, the Court has determined an evidentiary hearing is not necessary and concludes that Phinazee's § 2255 motion lacks merit and will be **DENIED** (Court File No. 486). The denial of Phinazee's § 2255 motion necessarily renders his motion for release on bond moot; thus it will be **DENIED** (Court File No. 511).

**I.    Standard of Review**

A sentence in a criminal case must be vacated if the Court makes a finding "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the

---

[1] Each document will be identified by the Court File Number assigned to it in the underlying criminal case.

constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, . . ." 28 U.S.C. § 2255. Under Rule 8 of the Rules Governing Section 2255 Proceedings in the United States District Courts, the Court is to determine, after a review of the answer and the record, whether an evidentiary hearing is required. If no hearing is required, the district judge is to dispose of the case as justice dictates.

A motion filed pursuant to 28 U.S.C. § 2255 must consist of something more than legal conclusions unsupported by factual allegations. *United States v. Johnson*, 940 F.Supp. 167, 170 (W.D. Tenn. 1996). To warrant relief under 28 U.S.C. § 2255 because of constitutional error, the error must be one of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (citation omitted); *Clemmons v. Sowders*, 34 F.3d 352 (6th Cir. 1994).

**II.     Procedural Background**

On June 24, 2003, a grand jury in the Eastern District of Tennessee returned a one-count indictment charging Phinazee and several others with conspiracy to distribute 50 grams or more of cocaine base and 5,000 grams or more of cocaine hydrochloride, in violation of 21 U.S.C. § 846. (Court File No. 2, Sealed Indictment).

Following a jury trial, Phinazee was convicted and was sentenced in the United States District Court for the Eastern District of Tennessee at Chattanooga on August 20, 2004, to 360 months imprisonment (Court File No. 328). Judgment was entered on September 16, 2004 (Court File No. 347). On January 11, 2006, Phinazee's conviction was affirmed on direct appeal, but his sentence was vacated and remanded for re-sentencing consistent with *United States v. Booker*, 543 U.S. 220 (2005). *United States v. Hereford & Phinazee*, 162 Fed. Appx. 439 (6th Cir., 2006),

*available at* 2006 WL 45238 (Court File No. 424). Phinazee was sentenced to 300 months on remand. Phinazee appealed and the Sixth Circuit affirmed. *United States v. Phinazee*, 515 F.3d 511 (6th Cir. 2008) (Court File No. 465). Phinazee timely filed the instant § 2255 motion on January 22, 2009, when he placed it in the prison's mailbox (Court File No. 486)

### III. Factual Background

The following recitation of facts is taken from the court of appeal's opinion affirming Phinazee's convictions:

> In 1997, a joint federal and local drug investigation identified Lindsey Morris as a major drug distributor in Chattanooga, Tennessee. From October 28, 1997, to May 21, 1998, authorities placed a pen register telephone tap on Morris's phone, tracing his incoming and outgoing calls. From April 22 to May 21, 1998, authorities placed a wire tap on the same phone, recording conversations between Morris and others in his drug-distribution operation.
>
> On July 1, 1998, federal agents executed a warrant to search Morris's residence, where they found 29 individually wrapped plastic bags that [sic] each contained a quarter ounce of crack cocaine. Morris agreed to testify against his co-conspirators up and down the chain of distribution.
>
> On June 24, 2003, a grand jury indicted John Hereford, Rafael Phinazee and eight others for conspiracy to distribute cocaine base (crack) and cocaine hydrochloride (powder).
>
> At trial, Morris testified that for much of 1997 and until his arrest in 1998 co-conspirator Stacy Anderson supplied him with between a quarter kilogram and a half kilogram of crack cocaine every week. In the summer of 1997, Morris began distributing the drugs to Hereford, selling him between a quarter ounce and an ounce of crack cocaine once or twice a week. Morris further testified that, to his knowledge, Hereford did not use the drugs personally, but rather sold them in conjunction with operating a "good-time house," otherwise known as a house of prostitution. Hereford typically would sell the crack cocaine to men who used the drug as payment to prostitutes who lived at Hereford's house or spent time there. The pen tap logged 236 calls between phones associated with Hereford and the phone Morris used to conduct his drug business. At trial, the jury heard conversations recorded by the wiretap in which Morris and Hereford discussed their distribution relationship, including plans to sell drugs on credit.

3

> Morris began selling crack cocaine to Phinazee in the spring of 1998 and eventually provided him with four ounces of crack every one or two weeks. Through the wiretap recordings, the jury heard more than 20 phone conversations between Morris and Phinazee in which the two discussed the details of their drug distribution arrangement, including Phinazee's use of lower-level dealers, the sale of drugs on credit and details of the larger distribution network.

*United States v. Hereford & Phinazee*, 162 Fed.Appx. 439, 441 (6th Cir. 2006), *available at* 2006 WL 45238.

**IV.  Analysis**

    **A.  Ineffective Assistance of Counsel Claims**

Phinazee asserts his trial counsel rendered ineffective assistance when he failed to argue Phinazee withdrew from the conspiracy five years prior to his indictment. The Court will analyze the claim after discussing the law applicable to ineffective assistance of counsel claims.

        *1.  Applicable Law*

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established the criteria for determining whether a Sixth Amendment claim of ineffective assistance of counsel is meritorious. The *Strickland* test requires that a defendant demonstrate two essential elements: (1) counsel's performance was deficient, i.e., counsel was not functioning as counsel guaranteed the defendant by the Sixth Amendment; and (2) counsel's deficient performance prejudiced the defense, i.e., deprived the defendant of a fair trial rendering the outcome of the trial unreliable. *Id*. at 687-88; *McQueen v. Scroggy*, 99 F.3d 1302, 1310-11 (6th Cir. 1996); *Sims v. Livesay*, 970 F.2d 1575, 1579-81 (6th Cir. 1992).

In order to demonstrate deficient performance, it must be shown that counsel's representation fell "below an objective standard of reasonableness" in light of the "prevailing professional norms." *Strickland*, 466 U.S. at 686-88.  In *Bobby v. Van Hook*, the Supreme Court reiterated that an

4

objective standard of reasonableness is a general standard:

> No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant. Restatements of professional standards, we have recognized, can be useful as "guides" to what reasonableness entails, but only to the extent they describe the professional norms prevailing when the representation took place.

*Bobby v. Van Hook*, ___ U.S. ___, 130 S.Ct.13, 16 (2009) (quoting *Stickland v. Washington*, 466 U.S. at 688-89) (citations omitted).

To establish the prejudice prong, a petitioner must show that absent his attorney's errors, the result of his trial would have been different. *Lynott v. Story*, 929 F.2d 228, 232 (6th Cir. 1991). As the Sixth Circuit explained in *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992), *cert. denied*, 508 U.S. 975 (1993): "Counsel is constitutionally ineffective only if performance below professional standards caused the defendant to lose what he otherwise would probably have won." *See also West v. Seabold*, 73 F.3d 81, 84 (6th Cir.), *cert. denied*, 518 U.S. 1027 (1996) (internal punctuation and citations omitted). "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the [ultimate] judgment." *West v. Seabold*, 73 F.3d at 84.

The Supreme Court has reiterated the standard of prejudice in *Wiggins v. Smith*, 539 U.S. 510 (2003):

> [T]o establish prejudice, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."

*Id*. at 534 (quoting *Strickland v. Washington*, 466 U.S. at 694).

When applying these standards, the Court is cognizant of the fact that there is a strong

presumption counsel's conduct was within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689. "Reviewing courts focus on whether counsel's errors have undermined the reliability of and confidence that the trial was fair and just." *Austin v. Bell*, 126 F.3d 843, 847 (6th Cir. 1997) (citing *Strickland*, 466 U.S. at 687; *United States v. Cronic*, 466 U.S. 648, 658, (1984), *cert. denied*, 523 U.S. 1088 (1998); *McQueen [v. Scroggy*], 99 F.3d [1302,] 1310-11[6th Cir. 1996]). A reviewing court cannot indulge in hindsight but must instead evaluate the reasonableness of counsel's performance within the context of the circumstances at the time of the alleged errors. *Strickland*, 466 U.S. at 690; *McQueen*, 99 F.3d at 1311. Trial counsel's tactical decisions are particularly difficult to attack. *McQueen*, 99 F.3d at 1311; *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). A defendant's challenge to such decisions must overcome a presumption that the challenged actions might be considered sound trial strategy. *McQueen*, 99 F.3d at 1311; *O'Hara*, 24 F.3d at 828. "[R]eviewing court[s] must remember that 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Wong v. Money*, 142 F.3d 313, 319 (6th Cir. 1998) (quoting *Strickland*, 466 U.S. at 690). A court must make an independent judicial evaluation of counsel's performance and determine whether counsel acted reasonably under all the circumstances. *McQueen*, 99 F.3d at 1311; *O'Hara*, 24 F.3d at 828; *Ward v. United States*, 995 F.2d 1317, 1321-22 (6th Cir. 1993); *Sims v. Livesay*, 970 F.2d 1575, 1580-81 (6th Cir. 1992).

### *2. Failure to Argue Withdrawal From the Conspiracy*

Phinazee claims he directed trial counsel to argue he had withdrawn from the conspiracy five years prior to being indicted and the records of a co-defendant, Lindsey Fitzgerald Morris, Sr., ("Morris") could establish his withdrawal defense but counsel failed to present that defense.

6

Phinazee argues Morris's records showing his name, phone number, and pager were scratched out of Morris's address book demonstrates they were no longer doing business.

Trial counsel presented a defense that Phinazee was not a member of the alleged conspiracy but rather, was simply involved in a buyer-seller relationship with Morris and he made those specific arguments during opening and closing arguments. During closing argument counsel specifically argued "Mr. Phinazee never joined a conspiracy. So there is no evidence that he withdrew from it[.]" (Court File No. 374, p. 178). Therefore, Phinazee's true attack is directed towards counsel's strategic decision to present a defense he never joined the conspiracy–an attack which offers him no relief. This is so because, as explained below, the Court will not second-guess a strategic decision of counsel which is "the result of reasonable professional judgment." *Strickland*, 466 U.S. at 690.

Because counsel's articulated strategy was that Phinazee was not involved in the conspiracy but rather was involved in a drug-dealer relationship with Morris, he had to cross-examine witnesses in such a way so as to be consistent with Phinazee's position that he was not involved in the conspiracy. Therefore, choosing not to cross-examine any witness about Phinazee's alleged withdrawal fit within that strategy. Undoubtedly, Morris would have denied Phinazee withdrew from the conspiracy had he been asked, since he testified he continued to sell Phinazee drugs after their last recorded call and their drug relationship continued until Morris got arrested (Court File No. 299, p. 66). Moreover, had counsel argued Phinazee withdrew from the conspiracy, he would have confirmed, by implication, Phinazee's involvement in the conspiracy. Therefore, although the evidence identified by Phinazee as demonstrating his withdrawal does not clearly show his withdrawal from the conspiracy, presentation of a withdrawal defense would have clearly

demonstrated his involvement in the conspiracy.

Given the evidence of guilt presented by the government, Phinazee's trial counsel was quite limited in what he could argue to the jury and realized that, based upon the available evidence, Phinazee could not satisfy the legal requirements of the withdrawal defense and that presenting such a defense would effectively admit his participation in the conspiracy.[2] Thus, it appears trial counsel's best strategic choice, perhaps his only choice, was to argue Phinazee never joined the drug conspiracy but rather, only had a buyer-seller relationship with Morris. Hence, rather than taking on the insurmountable burden of establishing the legal defense of withdrawal, counsel attempted to show the government was unable to meet its burden of proof. Counsel did so, by relying on the district court's instructions on conspiracy and arguing his client did not agree with the other people charged in the indictment to distribute drugs, was simply a drug dealer, and the government proved nothing more than a buyer-seller relationship between Phinazee and Morris. Although Phinazee now takes issue with this strategy, he has failed to demonstrate counsel's strategic decision was unreasonable. A § 2255 motion is a vehicle which ensures, among other things, all defendants are provided with their Sixth Amendment right to counsel. A § 2255 motion does not, however, provide

---

[2] The burden of proof is on a defendant to demonstrate he withdrew from the conspiracy because withdrawal is an affirmative defense. *United States v. Lash*, 937 F.2d 1077, 1084 (6th Cir. 1991). To meet this burden, more than mere cessation of activity in furtherance of the conspiracy is required. Indeed, a defendant must demonstrate he "took affirmative action to defeat or disavow the purpose of the conspiracy." *Id.* (Internal citations omitted). The Sixth Circuit has explained that the affirmative action of withdrawing from a conspiracy is "usually in the form of a full confession to authorities or communication to co-conspirators that one has abandoned a conspiracy and its goals." *United States v. Haque*, 315 Fed.Appx. 510, 523 (6th Cir. 2009), *available at* 2009 WL 484600. Notably, although Phinazee claims that prior to June of 1998 "the parties had settled all past debts and decided not to do business with each other[,]"(Criminal Court File No. 487, p. 2), Morris testified he was doing business with Phinazee up to the time Morris was arrested–testimony which the jury believed.

movants an opportunity to second-guess trial counsel's sound trial strategy in an attempt to get a second bite at the apple. Phinazee's counsel made a strategic decision to dispute the conspiracy charge rather than to argue he was involved in the conspiracy but withdrew. Phinazee's counsel did not fail to make an essential argument, but rather, he chose a different strategy, a strategy that is not subject to second-guessing or hindsight.

Therefore, Phinazee's argument that counsel was ineffective as a result of his strategic decision fails and relief is **DENIED** on this claim.

      B.      **Violation of *Brady v. Maryland*, 373 U.S. 83 (1963)**

Phinazee claims the United States withheld exculpatory information from its interview of him in which he told agents, on at least two occasions, he withdrew from the conspiracy prior to June 1998. Phinazee avers he told agents he had stopped all dealings with co-defendant Lindsey Morris prior to May 1998 because of a disagreement and he had in fact paid all debts owed to him in May 1998 and had no more contact with him. Phinazee argues, if this evidence had been disclosed, it would have established his withdrawal defense.

Initially the Court observes that this claim is procedurally defaulted as Phinazee should have raised this claim in the trial court during his criminal proceedings or on direct appeal. Thus, Phinazee bears the burden of demonstrating his default is excused by showing cause and actual prejudice, or that the failure to consider the claim will result in a miscarriage of justice by the conviction of one who is actually innocent, neither of which he addresses. *See Keeney v. Tamayo-Reyes*, 504 U.S. 1, 6-12 (1992). Because *Brady* does not require the prosecutor to provide information the defendant can himself obtain with reasonable diligence–in this case Phinazee made the statement he claims is *Brady* material and he could have requested a copy of his statement by

9

submitting a motion with the trial court, as Phinzaee was well aware he gave the statement–he is unable to demonstrate cause to excuse his procedural default. *See United States v. Pelullo*, 399 F.3d 197, 213 (3d Cir. 2005) (*Brady* does not require government to furnish defendant information he has or with reasonable diligence can obtain himself).

Nevertheless, even absent procedural default, Phinazee is not entitled to relief on this claim. "There are three components to a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensured." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). Prejudice (and materiality) is established by showing that "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985). "A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Id.*

Although Phinazee has not met his burden as to any of the three *Brady* components, most conspicuously, he is unable to demonstrate suppression on the part of the government, as Phinazee gave this evidence to the government. The Sixth Circuit "has recognized that *Brady* is concerned only with cases in which the government possesses information which the defendant does not." *Carter v. Bell*, 218 F.3d 581, 601 (6th Cir. 2000) (internal punctuation and citation omitted), *Coe v. Bell*, 161 F.3d 320, 344 (6th Cir.1998), *cert. denied*, 528 U.S. 842 (1999); *see also United States v. Bender*, 304 F.3d 161, 164 (1st Cir.2002), *cert. denied*, 537 U.S. 1167 (2003), *United States v. Runyan*, 290 F.3d 223, 245-46 (5th Cir.2002), *cert. denied*, 537 U.S. 888 (2002), *Felker v. Thomas*, 52 F.3d 907, 910 (11th Cir.1995), *cert. denied*, 516 U.S. 1133 (1996). The Court's research did not

reveal a Supreme Court case addressing this issue. Therefore, this Court is bound by Sixth Circuit precedent, which provides "[e]vidence known (or even knowable) to the defendant does not constitute suppressed evidence under *Brady*[,]" *United States v. Lee*, 188 Fed.Appx., 425, 427 (6th Cir. 2006), *available at* 2006 WL 2052918, "because in such cases there is really nothing for the government to disclose." *Coe v. Bell*, 161 F.3d at 344.

It is clear that Phinazee was well aware of the statement he gave law enforcement regarding his alleged withdrawal from the conspiracy. Consequently, the fact that he himself provided the information during an interview with agents, demonstrates on its face, there was no *Brady* violation. Accordingly, Phinazee's *Brady* claims offers him no relief and will be **DENIED** as procedurally defaulted, and alternatively, because there was no *Brady* violation.

### C. Two-level Weapon Enhancement

Phinazee claims he is actually innocent of the two-level sentence enhancement for possession of a firearm during the commission of this drug conspiracy offense. Phinazee argues the evidence was insufficient to support the enhancement because it was based solely on a statement by co-defendant Morris rather than evidence presented at the sentencing hearing. Phinazee claims he denied and objected to the enhancement but the Court never ruled on the objection during the sentencing hearing.

Initially, the Court observes this claim is procedurally defaulted as it should have been raised on appeal, when Phinazee challenged his sentence in the Court of Appeals for the Sixth Circuit. Absent a showing of cause and prejudice, or a miscarriage of justice relief must be denied. Even assuming this claim is properly before the Court, Phinazee is not entitled to any relief for the reasons explained below.

11

The presentence investigation report ("PSR") identified Phinazee's criminal activity as conspiracy to distribute at least 680 grams of crack cocaine, which resulted in a base offense level of 36. Upon application of a two-level enhancement for possession of a firearm in connection with the drug offense, his adjusted offense level was 38. Phinazee was adjudicated a career offender based on three prior felony drug convictions, however, because under the career offender provision the offense level was 37, the PSR used the higher adjusted offense level of 38. Phinazee had a total of 11 criminal history points, placing him in a criminal history category V. However, because he was a career offender, his criminal history category was enhanced to VI. Based on a total offense level of 38 and a criminal history category of VI, Phinazee's sentencing guidelines was 360 months imprisonment to life.

If the two-level firearms enhancement were not included in the calculation, Phinazee's adjusted offense level would be 36. The Court then would rely on the career offender calculations and find the total offense level is 37, the criminal history category is VI, and the advisory guideline range would still be 360 months to life. Consequently, even if Phinazee's claim has merit, it does not affect the guideline range and provides no basis for re-sentencing and relief will be **DENIED** on this claim.

**V.     Conclusion**

Phinazee has failed to present any facts which establish his conviction or sentence is subject to collateral attack under 28 U.S.C. § 2255. Accordingly, Phinazee is not entitled to any relief under § 2255 and a judgment will enter **DENYING** his § 2255 motion.

/s/
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**